IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

JAN 1 9 2022

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 22-cr-*10002* |
| Plaintiff, ) | |
| ) | VIOLATIONS: |
| v. ) | 18 U.S.C. § 1344 (Bank Fraud) |
| ) | 18 U.S.C. § 1343 (Wire Fraud) |
| CHAD D. CAMPEN, ) | 18 U.S.C. § 1957 (Monetary Transaction) |
| ) | 18 U.S.C. § 157 (Bankruptcy Fraud) |
| Defendant. ) | 18 U.S.C. § 152(2) (False Statement) |

**INDICTMENT**

The Grand Jury charges:

**COUNTS 1 – 5**
**(Bank Fraud)**

At all times material:

1. CHAD D. CAMPEN ("CAMPEN") was an individual who resided within the Central District of Illinois.

2. CAMPEN claimed to do business under several different names, including: CCS Farms; CCS Farms of Bartonville; and Middle Ground Farms.

3. AH was an individual who resided in the Central District of Illinois and was employed by CAMPEN.

4. Midstates Bank was a financial institution headquartered in Harlan, Iowa with branches and offices throughout Iowa. The deposits at Midstates Bank were insured by the Federal Deposit Insurance Corporation ("FDIC").

5. DW was an individual employed by Midstates Bank who was involved in overseeing loans to CAMPEN.

6. BT was an individual employed as an attorney at a private law firm that represented Midstates Bank with respect to issues involving CAMPEN.

7. Community State Bank was a financial institution headquartered in Galva, Illinois with branches and offices throughout central Illinois. The deposits at Community State Bank were insured by the FDIC.

8. Cherokee State Bank was a financial institution headquartered in Cherokee, Iowa. The deposits at Cherokee State Bank were insured by the FDIC.

9. F&M Bank was a financial institution headquartered in Galesburg, Illinois with branches and offices throughout Illinois. The deposits at F&M Bank were insured by the FDIC.

10. Midwest Bank was a financial institution headquartered in Monmouth, Illinois with branches and offices throughout Illinois. The deposits at Midwest Bank were insured by the FDIC.

11. Busey Bank was a financial institution headquartered in Champaign, Illinois with branches and offices in Illinois, Indiana, and Missouri. The deposits at Busey Bank were insured by the FDIC.

12. Better Banks was a financial institution headquartered in Peoria, Illinois with branches and offices throughout central Illinois. The deposits at Better Banks were insured by the FDIC.

13. Advance Funds Network was a company headquartered in Brooklyn, New York that assisted businesses in finding loan options and lenders.

## Scheme To Defraud

14. Beginning as early as January 1, 2013 and continuing to present, at Peoria, in the Central District of Illinois and elsewhere,

CHAD D. CAMPEN,

defendant herein, did knowingly engage in a scheme and artifice to defraud Midstates Bank, Community State Bank, Cherokee State Bank, F&M Bank, Midwest Bank, Busey Bank, Better Banks, and others and to obtain property by means of materially false and fraudulent pretenses, representations, and promises.

It was part of the scheme that:

15. CAMPEN represented himself as being involved in multiple business ventures, including farming; tractor and farm implement purchase, repair, and sale; agricultural businesses; seed, fertilizer, and farming supply sales; agricultural and business lending; solar farm development; and other business ventures.

16. CAMPEN used false claims of successes in business ventures and other false statements and information to obtain loans from Midstates Bank,

Community State Bank, Cherokee State Bank, F&M Bank, Midwest Bank, Busey Bank, Better Banks, and others.

 17. CAMPEN falsely represented to these banks and others:

  a. The amount of land he was farming;

  b. That he sold agricultural inputs for companies and obtained various benefits for his sale of those inputs when, in reality, he did not;

  c. That he had completed business deals and received substantial compensation when he had not;

  d. That he had substantial business deals and contracts in the works when he did not;

  e. That he had substantial amounts of grain in storage when he did not;

  f. That the tax returns he submitted had been filed with the Internal Revenue Service, when they had not been filed;

  g. That the tax returns contained accurate information, when, in truth and fact, the tax returns were false;

  h. That he had a stream of income from employment that did not exist; and

  i. His income and assets.

18. Unbeknownst to the banks, CAMPEN used the loan proceeds for purposes other than represented, including to support his lifestyle and perpetuate his claims of business and financial success. He also used the loan proceeds to pay off previous loans.

19. CAMPEN further used loan proceeds to employ individuals to work for him. He then used these employees to further perpetuate his false representations and further his appearance of success.

20. CAMPEN did not always pay all of his employees a regular salary. Instead, CAMPEN provided sporadic payments to some employees and compensated them by allowing them to use a corporate credit card for personal purposes. He further induced employees to continue working for him by promising them future payments from his purported business ventures.

21. CAMPEN caused employees to communicate with others on his behalf, help him create fictitious documents, transmit fraudulent documents on his behalf, and take out loans in their names in order to benefit CAMPEN.

22. CAMPEN also wrote checks to these employees and directed them to cash the checks, and give all or a portion of the proceeds, in cash, back to him.

23. CAMPEN further engaged in check kiting between the banks with whom he had formed relationships in order to perpetuate the appearance of

success and delay the detection of his fraud by the banks, his purported employees, and others.

### Execution of the Scheme

24. On or about the below-listed dates, at Peoria County, in the Central District of Illinois and elsewhere,

**CHAD D. CAMPEN,**

Defendant herein, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, did knowingly provide a false, fictitious, and fraudulent document and statement to the financial institution listed below for the purpose of obtaining money, funds, and other property owned by and under the control of the financial institution:

| Count | Date(s) | Financial Institution |
|---|---|---|
| 1 | Fall 2015 through Spring 2017 | F&M Bank |
| 2 | Fall 2016 | Midwest Bank |
| 3 | Fall 2017 through Spring 2018 | Busey Bank |
| 4 | Winter 2017 through Fall 2018 | Cherokee State Bank |

| | | |
|---|---|---|
| 5 | Fall 2019 through Spring 2020 | Midstates Bank |

All in violation of Title 18, United States Code, Section 1344.

## COUNTS 6 – 12
### (Wire Fraud)

25. The grand jury realleges and incorporates by reference as though fully restated herein paragraphs 1 – 23 as if fully set forth herein.

### Wire Communications

26. On or about each of the below-listed dates, in Peoria County, in the Central District of Illinois and elsewhere,

**CHAD D. CAMPEN,**

Defendant herein, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, did knowingly cause to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description |
|---|---|---|
| 6 | 10/6/19 | Email to DW attaching purported 2018 tax return |
| 7 | 10/7/19 | Email to DW attaching purported 2017 tax return |
| 8 | 10/13/19 | Email to DW attaching purported 2016 tax return |
| 9 | 10/15/19 | Email to DW |

7

| | | |
|---|---|---|
| | | providing financial documents |
| 10 | 11/25/19 | Email to DW attaching accounts receivable and other documents |
| 11 | 12/31/19 | Email to DW providing financial documents |
| 12 | 7/2/20 | Loan application to Advance Funds Network |
| 13 | 4/22/21 | Email from AH to BT regarding repayment |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 14 – 15
### (Illegal Monetary Transaction)

27. On or about each of the below-listed dates, in Peoria County, in the Central District of Illinois and elsewhere,

**CHAD D. CAMPEN,**

Defendant herein, knowingly engaged, attempted to engage, and caused others to engage, in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institution identified below, such property having been derived from specified unlawful activity, that is bank fraud:

| Count | Date | Financial Transaction/Institution | Amount |
| --- | --- | --- | --- |
| 14 | 4/3/19 | ACH payment from Community State Bank account #XXX-X90-3 payable to American Express account X-XX004 | $91,054.28 |
| 15 | 5/3/19 | ACH payment from Community State Bank account #XXX-X90-3 payable to American Express account X-XX004 | $33,394.49 |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 16
### (Bankruptcy Fraud)

28. The grand jury realleges and incorporates by reference as though fully restated herein paragraphs 1 – 23 as if fully set forth herein.

29. On or about November 3, 2020, in the Central District of Illinois, and elsewhere,

**CHAD D. CAMPEN,**

Defendant herein, with the intent to continue the scheme and artifice to defraud described above, and for the purpose of executing and concealing said scheme and artifice, filed a document in a proceeding under Title 11, United States Code, to wit a Statement of Financial Affairs for Individuals Filing for Bankruptcy, Dkt. No. 66, *In re: Chad Duane Campen*, Case No. 20-80986, in which he falsely claimed that:

    a. His gross income for 2018 was $3,926,228, when, in reality, it was not;

    b. He had $2,807,571.30 in stored corn and soybeans, when, in reality, he did not; and

    c. He had $3,330,815.00 in growing crops when, in reality, he did not.

All in violation of Title 18, United States Code, Section 157.

## COUNT 17
### (False Statements Under Oath)

30. The grand jury realleges and incorporates by reference as though fully restated herein paragraphs 1 – 23 as if fully set forth herein.

31. On or about October 28, 2020, in the Central District of Illinois, and elsewhere,

**CHAD D. CAMPEN,**

Defendant herein, knowingly and fraudulently made a false material statement under oath in and in relation to a case under Title 11, *In re: Chad Duane Campen*, Case No. 20-80986, by falsely stating under oath in a proceeding before the case trustee at a meeting of creditors that:

    a.    He planted 4,800 acres in 2020;

    b.    He planted 4,200 – 4,600 acres in 2019;

    c.    He had sold between $800,000 and $1,000,000 of grain to Ag-Land FS;

    d.    He had sold around $2.1 million in grain to ADM in February of 2020; and

    e.    He had $9,403,566.30 in assets.

All in violation of Title 18, United States Code, Section 152(2).

                                                                             A True Bill,
                                                                             *s/Foreperson*

                                                                              Foreperson

*s/Douglas McMeyer*

    Gregory K. Harris
    UNITED STATES ATTORNEY
    DFM